UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| CHRIS CORBITT, et al.,<br><br>  Plaintiffs,<br><br>v.<br><br>OLD REPUBLIC INSURANCE<br>COMPANY, et al.,<br><br>  Defendants. | No. 5:22-CV-031-H |

## MEMORANDUM OPINION AND ORDER

  In April 2021, Old Republic Insurance Company, through its counsel Jody Jenkins, recorded an abstract of judgment in favor of Old Republic against Chris and Amy Corbitt. In May, the title company handling the sale of the Corbitts' home notified them of the abstract of judgment, informing them that it needed to be resolved before the June closing date. The Corbitts' attorney notified Jenkins of the issue, and Jenkins overnighted the release of the abstract, which was recorded days before the Corbitts' closing date. The Corbitts later filed suit, bringing claims under the Fair Debt Collection Practices Act, the Texas Debt Collection Act, and the Texas Civil Practice & Remedies Code.

  The parties have since moved for summary judgment and partial summary judgment. The defendants argue that the plaintiffs do not have standing as to their FDCPA claims and that their claims are moot. The plaintiffs argue that they are entitled to summary judgment on their FDCPA and TDCA claims. Because the plaintiffs have suffered an injury in fact, their claims are not moot, and a genuine issue of material fact exists as to whether the defendants committed a bona fide error, which serves as a defense to the plaintiffs' claims, the Court denies both motions for summary judgment.

1.      **Factual and Procedural Background**

The following facts are undisputed. In 2015, Old Republic filed suit against the Corbitts, ultimately receiving a no-answer default judgment in their favor. Dkt. No. 1 at 3. Upon discovery of this judgment, the Corbitts filed a Bill of Review to set it aside. *Id.* at 4. The Corbitts ultimately reached a settlement with Old Republic, which was memorialized in an Agreed Order and signed by the trial court, Jody Jenkins, as attorney for Old Republic Insurance Company, and Dana Karni, as counsel for the Corbitts. Dkt. No. 1-2 at 2–3. The trial court signed an order of nonsuit with prejudice as to Old Republic's claims against the Corbitts. Dkt. No. 1-3 at 2.

In April 2022, Old Republic, through Jenkins, recorded an abstract of judgment in Harris County, Texas.[1] Dkt. No. 1-1 at 2–3. The abstract of judgment was for the 2015 judgment in favor of Old Republic against the Corbitts, which had previously been settled. *Id.* At the time, the Corbitts were in the process of selling their home, which had a closing date of June 14, 2021. Dkt. No. 43 at 5–6.

In May 2021, Amy Corbitt received a call from the title company handling the sale of their home, notifying her of a lien on their property from Old Republic. *Id.* at 5. The title company insisted that the judgment be resolved as a condition to selling their home. *Id.* Amy Corbitt called Jenkins's office but was told that the office could not speak with her because she was represented by counsel. *Id.* The Corbitts contacted Karni, the attorney who had helped them settle the judgment in 2015. *Id.* at 6. Karni informed them that she could no longer help them because she was not in private practice but referred them to Jerry Jarzombek, and he began representing the Corbitts. *Id.*

---

[1] The defendants assert that the abstract of judgment was unintentionally filed. Dkt. No. 39 at 9–11.

On June 7, 2021, Jarzombek emailed Jenkins to inform him of the error. Dkt. No. 40 at 8. Shortly after, Jenkins overnighted the release of the abstract of judgment. *Id.* at 3–5, 17–18. The release was recorded on June 10, 2021 (*Id.* at 6–7) and the home was sold on June 14, 2021 (Dkt. No. 38 at 24–26).

The plaintiffs then filed their complaint in the Fort Worth Division, alleging that the defendants had violated the Fair Debt Collection Practices Act (FDCPA), the Texas Debt Collection Act (TDCA), and the Texas Civil Practice & Remedies Code (CPRC). Dkt. No. 1. The defendants moved to transfer the case to the Lubbock Division (Dkt. No. 9), which was granted (Dkt. No. 16).

The plaintiffs have since moved for partial summary judgment on their FDCPA and TDCA claims, requesting that the Court assess statutory damages as to their FDCPA claims but determine actual damages for both their FDCPA and TDCA claims later. Dkt. Nos. 33; 34 at 1, 6–8. The plaintiffs also left their claim under the CPRC for determination at a later date. Dkt. No. 34 at 10. The defendants also moved for summary judgment, arguing that the plaintiffs do not have standing to assert their FDCPA claims because they have not suffered an injury in fact, the plaintiffs' claims are moot, and the Court may not exercise supplemental jurisdiction over the plaintiffs' state claims if the Court dismisses only the plaintiffs' federal claims. Dkt. Nos. 36; 37. Both motions are ripe and ready for the Court's resolution.

## 2.   Legal Standards

"A party may move for summary judgment, identifying each claim or defense . . . on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." *Id.* Movants must support their assertion that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record[] . . . or showing that the materials cited do not establish the . . . presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A)–(B). Courts must consider "the cited materials, but [they] . . . may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

In evaluating a motion under Rule 56, the Court must determine whether, after considering the evidence in the light most favorable to the nonmoving party, a rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis omitted).

3.  Analysis

In their motion for summary judgment, the defendants argue that the plaintiffs do not have standing to assert their FDCPA claims because they have not suffered an injury in fact. Dkt. No. 37 at 6–12. They also allege that the plaintiffs' claims are moot because Jenkins overnighted a release of the abstract of judgment, which was filed before the plaintiffs' closing date. *Id.* at 11–12. As explained below, a bare statutory violation does not satisfy the injury-in-fact requirement. Nevertheless, the Court finds that the plaintiffs have established an injury in fact: a cloud was placed on the title of their home. That harm is similar in kind to a harm traditionally recognized as providing a basis for a lawsuit in

American courts, specifically a suit asserting a quiet-title claim. In addition, as Fifth Circuit precedent counsels, because the plaintiffs seek monetary damages, their claims are not moot. Therefore, the Court denies summary judgment as to the defendants.[2] The Court also overrules the defendants' objection to the plaintiffs' evidence regarding emotional distress (Dkt. No. 44 at 3) because the plaintiffs' general prayer for relief is sufficient to satisfy Federal Civil Rule of Procedure 8.

The plaintiffs, on the other hand, request that summary judgment be granted in their favor as to their FDCPA and TDCA claims, arguing that they can meet all of the necessary elements. Dkt. No. 34 at 6–10. The defendants, however, asserted a bona fide error defense in their answer (Dkt. No. 7 at 4) and responded to the plaintiffs' motion by pointing to evidence to show that they satisfy the requirements for the defense (Dkt. No. 39 at 9–11). Because a rational jury could find for the defendants as to their bona fide error defense, the Court denies summary judgment in favor of the plaintiffs.

### A. The plaintiffs have standing because they suffered an injury in fact.

At the outset, the defendants argue that the plaintiffs do not have standing because they have not suffered an injury in fact. Dkt. No. 37 at 6–12. Federal courts have jurisdiction over cases or controversies only, and standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984)). "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they

---

[2] The defendants also argue that, if the Court dismisses the plaintiffs' federal claims, the Court must decline exercising supplemental jurisdiction over the plaintiffs' state claims. Dkt. No. 37 at 12. The Court does not reach this argument because the plaintiffs have standing to assert their FDCPA claims.

press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021).

To demonstrate that the Court has jurisdiction, the plaintiffs must demonstrate, among other requirements, that they have suffered an "injury in fact." *Lujan*, 504 U.S. at 560. An injury in fact is "an invasion of a legally protected interest" that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). A concrete injury is one that must "actually exist"—it must be "real, and not abstract." *Id.* at 340 (internal quotation marks omitted). As for particularity, the plaintiff must be affected in a "personal and individual way." *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560 n.1). "Tangible" and "concrete" are not synonyms; the latter is broader than the former, which encompasses intangible injuries within "injuries in fact." *See TransUnion*, 141 S. Ct. at 2204.

Under Article III, an injury in law is not an injury in fact. "Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* at 2205 (emphasis omitted). Therefore, a plaintiff who "is merely seeking to ensure a defendant's 'compliance with regulatory law'" does not have "grounds for Article III standing" absent some "physical, monetary, or cognizable intangible harm traditionally recognized as providing a basis for a lawsuit in American Courts." *Id.* at 2206 (quoting *Spokeo*, 578 U.S. at 345).

> i. **A bare statutory violation is insufficient to provide the plaintiffs with standing.**

In responding to the defendants' argument, the plaintiffs focus primarily on the defendants' alleged statutory violations. Dkt. No. 42 at 1, 7–9. The plaintiffs also rely heavily on *Smith v. Moss Law Firm*, a case in which this Court noted that Fifth Circuit and

other courts across the country had "considered whether a violation of the FDCPA itself confers standing on a plaintiff, and they ha[d] answered that question in the affirmative." No. 3:18-CV-2449-D, 2020 WL 584617, at *4 (N.D. Tex. Feb. 6, 2020) (internal quotation marks and citation omitted). The Court in that case went on to find that because the plaintiff "ha[d] alleged harm of the type of FDCPA was meant to address, . . . a reasonable jury could find that he suffered an injury for purposes of satisfying Article III standing." *Id.* at *5. Nevertheless, this theory is now foreclosed by Fifth Circuit precedent.

Following the Supreme Court's decision in *TransUnion LLC v. Ramirez*, the Fifth Circuit concluded that a bare violation of a debtor's statutory rights under the FDCPA is insufficient to qualify as an injury in fact and thus fails to provide a plaintiff with standing. *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 823–24 (5th Cir. 2022). In so holding, the Fifth Circuit relied on *TransUnion*'s holding that "Article III standing requires a concrete injury even in the context of a statutory violation" and that a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize the person to sue to vindicate that right." *Id.* at 824 (quoting *TransUnion*, 141 S. Ct. at 2205). Instead, the Fifth Circuit looked for the existence of a harm bearing a "close relationship in kind" to a harm that "the common law has recognized as actionable." *Id.* at 821–22 (internal quotation marks omitted). Consequently, the defendants' alleged FDCPA violations alone do not satisfy the injury-in-fact requirement.

### ii. The abstract of judgment placed a cloud on the plaintiffs' title during the closing of the sale of their home, which constitutes an injury in fact.

Nevertheless, the plaintiffs also argue that they were injured because the abstract of judgment put a cloud on the plaintiffs' title to their home. Dkt. No. 42 at 7; *see also* Dkt. No. 1 at 4. As explained in *TransUnion*, "courts should assess whether the alleged injury to the plaintiff has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." 141 S. Ct. at 2204 (internal quotation marks omitted). "That inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *Id.* In analyzing whether the plaintiff's alleged harm bore a "sufficiently close relationship to [a] traditional" claim, the Supreme Court noted that the "fundamental requirement[s]" of such a claim should be present. *Id.* at 2210 n.6. As the Fifth Circuit further clarified, a plaintiff must "show that the type of harm he's suffered is similar in kind to a type of harm that the common law has recognized as actionable." *Perez*, 45 F.4th at 822.

The harm that the plaintiffs allege here—a cloud on their title to property—is a harm that has been recognized by common law as actionable, providing a basis for lawsuits in American courts. Specifically, plaintiffs seeking to remove a cloud on their property traditionally bring a quiet-title claim. *See, e.g.*, *United States v. O.E. Morrison*, 247 F.2d 285, 287 (5th Cir. 1957) (discussing a lawsuit in which a plaintiff brought suit to "quiet title and remove the cloud of . . . liens"); *Coleman v. Bank of New York Mellon*, 969 F.Supp.2d 736, 752 (N.D. Tex. 2013) (explaining that a suit to quiet title is "also known as a claim to remove cloud from title"); *Thomson v. Locke*, 66 Tex. 383, 388, 1 S.W. 112, 115 (1886) (discussing "[t]he action to quiet title to land"). To prevail on a suit to quiet title, "a plaintiff must show

– 8 –

that: (1) he has an interest in a specific property; (2) his title to the property is affected by a claim by the defendant; and (3) the claim, although facially valid, is invalid or unenforceable." *Coleman*, 969 F.Supp.2d at 752.

Here, the record evidences that the Corbitts had an interest in the property, which the defendants do not dispute. *See* Dkt. Nos. 35 at 12–13; 43 at 3, 5. By filing an abstract of judgment, the defendants asserted a claim on the property. *See* Dkt. No. 35 at 12–13; *see also Prospect Capital Corp. v. Mutual of Omaha Bank*, 819 F.3d 754, 757 (5th Cir. 2016) (explaining that under Texas law, a judgment lien is created by filing an abstract of judgment) (quoting *Drake Interiors, L.L.C. v. Thomas*, 433 S.W.3d 841, 847 (Tex. App.—Houston [14th Dist.] 2014, pet. denied)). Moreover, the abstract of judgment was erroneously filed and thus invalid or unenforceable. *See* Dkt. No. 37 at 5. And there were actual consequences here. The title company handling the sale of the plaintiffs' home discovered the lien and informed the plaintiffs that the sale would not close unless they removed the cloud from the title. Dkt. Nos. 35 at 10; 43 at 5; *see TransUnion*, 141 S. Ct. at 2208–09 (explaining that the plaintiffs whose credits reports had been disseminated to third parties had suffered an injury in fact sufficient to confer standing). Therefore, because the harm here is similar in kind to a harm recognized at common law and all of the fundamental requirements for such a claim are present, the plaintiffs have shown that they suffered an injury in fact. *See TransUnion*, 141 S. Ct. at 2204 (explaining that intangible harms can be concrete and "[c]hief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts").

The defendants argue, however, that the abstract of judgment did not create a cloud on the plaintiffs' property under Texas law because the property was the Corbitts'

homestead. As they point out, the Texas Constitution's protection and cases interpreting this protection have clearly held that judgment liens on homestead property normally do not attach and are thus unenforceable. Dkt. No. 37 at 10; *see* Tex. Const. art. XVI, § 50; *see also United States v. Johnson*, 160 F.3d 1061, 1064 (5th Cir. 1989); *In re McCombs*, 659 F.3d 503, 508 (5th Cir. 2011). Nevertheless, as courts have also pointed out, "[a] claim does not have to be valid or enforceable to cast a cloud on one's title." *Watson v. Land America Austin Title*, No. A-08-CA-170-SS, 2008 WL 11411514, at *1 (W.D. Tex. May 13, 2008) (quoting *Tarrant Bank v. Miller*, 833 S.W.2d 666, 668 (Tex. App.—Eastland 1992, no writ.)). In fact, "[l]ogic would dictate that most clouds arise from invalid claims on the title." *Tarrant Bank*, 833 S.W.2d at 668. Thus, simply "[b]ecause the lien is unenforceable as to the homestead does not mean that the lien does not cast a cloud on the title." *Id.* at 667. And the facts here bear that out—the invalid lien barred the closing of the plaintiffs' home unless and until they removed the cloud. Dkt. Nos. 35 at 10; 43 at 5. As such, because the plaintiffs have suffered an injury in fact, they have standing to assert their FDCPA claims.

### B. The plaintiffs' claims are not moot because the plaintiffs seek monetary damages.

The defendants also argue that the plaintiffs' claims are moot because the abstract of judgment was released before the Corbitts' closing date. Dkt. No. 37 at 11–12. Nevertheless, as the Fifth Circuit has previously explained, where the plaintiffs assert claims for damages or seek other monetary relief, the plaintiffs' claims are sufficient to defeat mootness. *Duarte ex rel. Duarte v. City of Lewisville, Texas*, 759 F.3d 514, 521 (5th Cir. 2014) (citing *Morgan v. Plano Indep. Sch. Dist.*, 589 F.3d 740, 748 & n.32 (5th Cir. 2009)); *see also* 13C Charles A. Wright. & Arthur R. Miller et al., *Federal Practice and Procedure* § 3533.3 (3d ed. 2013) ("Claims for damages or other monetary relief automatically avoid mootness, so

long as the claim remains viable."). Here, the plaintiffs seek statutory damages and actual damages. Dkt. No. 34 at 1–2, 8, 10; *see also* Dkt. No. 1 at 7. Because they seek a monetary relief, the plaintiffs' claims are not moot.

> **C.** **Because the plaintiffs' complaint includes a request for actual damages in its prayer for relief, the defendants' objection to the evidence of emotional distress is overruled.**

In the defendants' reply, the defendants object to the plaintiffs' evidence alleging emotional distress, urging the Court to strike the plaintiffs' affidavits. Dkt. No. 44 at 3. The defendants argue that because the plaintiffs did not specifically request damages for emotional distress in their complaint, the plaintiffs cannot seek those damages now. *Id.* The Court disagrees. Federal Rule of Civil Procedure Rule 8(a)(3) requires that the complaint include a "demand for the relief sought." "This is not an onerous requirement." *Indel Food Products, Inc. v. Dodson International Parts Inc.*, No. EP-20-CV-98-KC, 2022 WL 18585884, at *4 (W.D. Tex. Sept. 21, 2022). The "longstanding, permissive interpretation of Rule 8(a)(3) is best understood in the context of Rule 54(c)." *Indel Food Products, Inc.*, 2022 WL 18585884, at *4.

Under Federal Rule of Civil Procedure 54(c), courts are authorized "to grant any appropriate relief following a general prayer by the plaintiff, even if the plaintiff did not specifically seek it, [] where relief is otherwise legally permitted." *Peterson v. Bell Helicopter Textron, Inc.*, 806 F.3d 335, 340 (5th Cir. 2015); *see also Indel Food Products, Inc.*, 2022 WL 18585884, at *4 ("[D]istrict courts may grant any appropriate relief following a general prayer by the plaintiff, even if the plaintiff did not specifically seek it." (internal quotation marks omitted)). The Fifth Circuit has qualified Rule 54(c)'s latitude, however, by explaining that "damages not pled are permitted '[] unless the failure to demand such relief

prejudiced the opposing party.'" *Peterson*, 806 F.3d at 340 (quoting *Sapp v. Renfroe*, 511 F.3d 172, 176 n.3 (5th Cir. 1975)). "'[F]ailure to seek a form of permissible relief in his pleadings may operate to prejudice the opposing party when that relief is finally sought at a much later stage of the proceedings.'" *Peterson*, 806 F.3d at 340 (quoting *Engel v. Teleprompter Corp.*, 732 F.2d 1238, 1242 (5th Cir. 1984)).

Here, however, the plaintiffs' complaint specifically includes a request for relief in the form of "actual damages," which is legally permitted under the FDCPA. Dkt. No. 1 at 7. As stated in the statute, a plaintiff may recover actual damages as a result of a violation. 15 U.S.C. § 1592k(a)(1). In the context of the FDCPA, a plaintiff may recover actual damages for emotional distress and mental anguish. *Reyelts v. Cross*, 968 F. Supp. 2d 835, 846 (N.D. Tex. 2013). Thus, the plaintiffs' general prayer "suffices to clear the low bar of Rule 8(a)(3)." *Indel Food Products, Inc.*, 2022 WL 18585884, at *4. In addition, contrary to the defendants' argument that the plaintiffs' allegations are not supported by the summary judgment record (Dkt. No. 44 at 3), the plaintiffs point to Chris Corbitt's affidavit as evidence. Dkt. Nos. 42 at 3; 43 at 6. As such, the Court overrules the defendants' objection to strike the evidence of emotional distress.[3]

### D. A rational trier of fact could find for the defendants on their bona fide error defense, which precludes summary judgment for the plaintiffs.

In the plaintiffs' motion for partial summary judgment, the plaintiffs seek a determination of liability as to their FDCPA and TDCA claims. Dkt. No. 34 at 1–2, 6–10.

---

[3] As the defendants correctly point out, however (Dkt. No. 44 at 4), should the plaintiffs seek actual damages for emotional distress, they will be required to show the "nature, duration, and severity of the mental anguish" and establish "a substantial disruption in the [p]laintiffs' daily routine." *Reyelts*, 968 F. Supp. 2d at 846 (citing *Bullock v. Abbott & Ross Credit Servs., L.L.C.*, No. A-09-413-LY, 2009 WL 4598330, at *3 (W.D. Tex. Dec. 3, 2009)).

The plaintiffs also request an assessment of statutory damages under the FDCPA. *Id.* at 1, 6–8. In response, the defendants assert the bona fide error defense, which they asserted in their answer, as well. Dkt. Nos. 39 at 9–11; 7 at 4.

Under the FDCPA, "[a] debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). Therefore, "to assert the defense, [the defendants] must establish that (1) [their] violation of the FDCPA was unintentional; (2) it resulted from a bona-fide error; and (3) [the defendants] had reasonably adopted procedures in place to avoid such an error." *Woodall v. Williams, Rush & Associates, LLC*, No. 3:19-CV-2117-B, 2020 WL 2839286, at *6 (N.D. Tex. June 1, 2020). Similarly, under the TDCA, "[a] person does not violate this chapter if the action complained of resulted from a bona fide error that occurred notwithstanding the use of reasonable procedures adopted to avoid the error." Tex. Fin. Code § 392.401. Thus, the creditor must prove "(1) that the violation was not intentional and resulted from a bona fide error and (2) that the creditor adopted procedures which were designed to avoid and prevent these types of errors." *Alanis v. US Bank Nat'l Ass'n*, 489 S.W.3d 485, 504 (Tex. App.—Houston [1st Dist.] 2015, pet. denied).

Here, the defendants argue that the abstract of judgment was filed as a result of a clerical coding error and was not intentional. Dkt. Nos. 39 at 10–11; 40 at 35. According to the plaintiffs, as soon as the defendants became aware of the mistake, they "provided a copy of the release of the abstract to [the plaintiffs'] attorney with a tracking number for the overnighted original sent to the court for recordation," which indicates a lack of intent.

Dkt. Nos. 39 at 10; 40 at 3–6, 17–18. In addition, the defendants assert that processes had been set in place at the law firm where Jenkins was employed to ensure that employees "accurately document all account activities in [the] collection management system," citing the law firm's account-handling procedures and prohibition of unfair acts or practices. Dkt. No. 39 at 10; 40 at 32–34. In light of the defendants' arguments and evidence, which appears at this stage to strongly support a bona fide error defense, the Court concludes that a rational jury could find for the defendants. Therefore, summary judgment as to the plaintiffs' FDCPA and TDCA claims is improper.[4]

### 4. Conclusion

Because the plaintiffs meet the injury-in-fact requirement for standing and their claims are not moot, the defendants' motion for summary judgment is denied. Because a genuine issue of material fact exists as to whether the defendants filed the abstract of judgment intentionally or due to error, which goes directly to the bona fide error defense that the defendants assert, the plaintiffs' motion for partial summary judgment is denied.

So ordered on May 17, 2023.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE

---

[4] The Court also notes that under 15 U.S.C. § 1692k(b)(1), in determining the amount of liability for a successful action under subsection (a)(2)(A), which permits the Court to assess $1,000 in additional damages for an action by an individual, the Court shall consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional."